UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **MICAH GALLOWAY** | **CASE NO. 6:20-CV-00116** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **MORAN TOWING OF LAKE CHARLES, LLC, ET AL.** | **MAG. JUDGE PATRICK J. HANNA** |

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment filed by Defendants Moran Towing Corporation and Moran Towing of Lake Charles, LLC (collectively, "Moran"). [ECF No. 19]. Pursuant to the motion, Moran seeks a ruling that its maintenance and cure obligations have been met, arguing Plaintiff Micah Galloway has reached maximum medical improvement ("MMI"). For the reasons set forth below, the motion is DENIED.

**I.**
**BACKGROUND**

On December 24, 2018, Plaintiff Micah Galloway was working as a deckhand aboard the tugboat ELEANOR MORAN. [ECF No. 1 at 3; ECF No. 19-1 at 5]. On that day, Plaintiff alleges the Captain of the tug ordered him to connect the towline to a vessel through the vessel's Panama Chock. [ECF No. 1 at 4]. Before connecting the towline, Plaintiff noticed the metal on the chock was rusted and corroded. Plaintiff informed the Captain he did not think it was safe to use the chock, because the towline could get stuck or cut by the corroded condition of the chock. *Id.* The Captain instructed Plaintiff to connect to the chock anyway, because that would be easier for the crew of the towed vessel. *Id.* After towing the vessel for some time, the Captain instructed Plaintiff to break tow. *Id.* According to Plaintiff, the towline had become stuck on the corroded metal of

the chock, and he was unable to retrieve the line. *Id.* Plaintiff advised the Captain that he needed help removing the line but was told to continue trying. *Id.* at 4-5. Plaintiff alleges he did as instructed and while pulling on the line, he "felt a pop in his back." *Id.* at 5. Plaintiff advised the Captain he was hurt and was later driven to the hospital. *Id.* According to Plaintiff, the accident has caused severe "neurological injuries to his spine and legs." *Id.* Plaintiff subsequently brought this suit, asserting claims for Jones Act negligence, unseaworthiness, and maintenance and cure. *Id.* at 5-7. Moran now seeks dismissal of its maintenance and cure obligation, arguing Plaintiff has reached maximum medical improvement.

## II.
### STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted). When reviewing a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence

favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial," *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)), and "[c]redibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

### III.
### APPLICABLE LAW

"A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship."[1] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001). "The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment." *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006); *see also The Dutra Grp. v. Batterton*, 139 S.Ct. 2275, 2279 (2019). At issue in this matter is cure:

> "Cure involves the payment of therapeutic, medical, and hospital expenses not otherwise furnished to the seaman . . . until the point of 'maximum cure.'" *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979). Maximum cure occurs "when it appears probable that further treatment will result in no betterment of the seaman's condition." *Id.* "Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Id.* It logically follows that, "when a particular medical procedure is merely palliative in nature or serves only to relieve pain and suffering, no duty to provide payments for cure exists." *Johnston v. Tidewater Marine Serv.*, 116 F.3d 478, at *2 (5th Cir. 1997) (per curiam)

---

[1] Maintenance is a daily stipend for living expenses; cure is the payment of medical expenses. *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015).

(unpublished table opinion). For example, if a seaman's epilepsy is caused by scarring in his brain, medicine for "[c]ontrol of seizures is not a cure, for the precipitative factor, the scarring, remains." *Stewart v. Waterman S.S. Corp.*, 288 F.Supp. 629, 633–35 (E.D.La. 1968), *aff'd*, 409 F.2d 1045 (5th Cir. 1969) (per curiam), cited with approval in *Pelotto*, 604 F.2d at 400.

*Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015).[2] "After a seaman has proved his initial entitlement to maintenance and cure, the burden shifts to the ship owner to prove that maximum cure has been reached." *Weeks Marine, Inc. v. Watson*, 190 F.Supp.3d 588, 597 (E.D. La. 2016) (citing 1 Thomas J. Schoenbaum, ADMIRALTY & MARITIME LAW § 6-33 (5th ed.)). Ambiguities or doubts as to a seaman's right to receive maintenance and cure are to be resolved in favor of the seaman. *Id.*; *see also Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962).

## IV.
### ANALYSIS

Moran argues the summary judgment record shows Plaintiff has reached MMI. In support, Moran cites to the opinions of various physicians who found Plaintiff to be at MMI. Moran then claims Plaintiff's current treating physician – Dr. Michael Haydel – has likewise declared that Plaintiff has reached MMI and any further treatment will be merely palliative. At the time of the filing of this motion, Plaintiff was to have a spinal cord stimulator (SCS) implanted by Dr. Haydel. According to Moran, while Dr. Haydel disagreed at his deposition that his treatment was "palliative," an examination of the substance of his testimony shows that his treatment is "palliative" as defined by the pertinent jurisprudence. [ECF No. 19-1 at 8, 13]. Moran further contends that "[n]owhere in Dr. Haydel's deposition did he state that the SCS would actually improve Mr. Galloway's condition." *Id.* at 12.

---

[2] A seaman may bring a new action for maintenance and cure if his medical condition changes such that further treatment would improve his condition. *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79–80 (5th Cir. 1990).

Moran fails to address the testimony of Dr. Haydel that undercuts its argument. For example, Dr. Haydel testified that in light of his clinical experience, he believes "in some ways th[e] stimulator reconditions that neuropathic pathway." [ECF No. 24-2 at 33]. Dr. Haydel further testified:

> But if a patient has chronic pain and now suddenly they don't, I would argue that you healed them.
>
> In other cases, you know, well, if you made a physical change with surgery and their pain went away. Same thing, we made a physical change that resulted in reduction of pain, then I guess you healed them.
>
> . . . .
>
> . . . So I think if we use the spinal cord stimulator, and he has minimal or no pain, *you have changed the physiology or the environment* such that you have made a major change in someone's life.

*Id.* at 36-37 (emphasis added). Finally, Dr. Haydel testified that a successful SCS could improve Plaintiff's "function of everyday living," it could improve his ability to walk further, sit and stand longer, and improve his chances of returning to gainful employment.[3] *Id.* at 50-52. This testimony indicates Dr. Haydel's treatment is more than merely palliative, it is potentially curative.

"It is the medical, not the judicial, determination of permanency that terminates the right to maintenance and cure. . . ." *Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985) (quoting *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 202 (1st Cir. 1980)); *see also Breese v.*

---

[3] On March 26, 2021, Moran filed a supplemental memorandum wherein it advised the Court that since the filing of its motion, Dr. Haydel attempted to implant a spinal cord stimulator for Plaintiff but had to remove the device. [ECF No. 26-1 at 3]. According to Moran, the SCS was removed because it provided Plaintiff with "no benefit" and caused him discomfort. *Id.* According to Moran, the only treatment still available is a T4/T5 medial branch block, which is "palliative, not curative, in nature." *Id.* at 3. Moran cites three non-binding rulings in support of its position, *Id.* at 4, but provides the Court with no medical testimony on this point. "The shipowner's obligation . . . to furnish cure . . . is [not] discharged until the earliest time when it is reasonably and in good faith determined by those charged with the seaman's care and treatment that the maximum cure reasonably possible has been effected." *Vella v. Ford Motor Co.*, 421 U.S. 1 n.5 (1975) (quoting *Vitco v. Joncich*, 130 F.Supp. 945, 949 (S.D. Cal.1955), *aff'd*, 234 F.2d 161 (9th Cir. 1956)). Without such evidence, Moran fails to carry its burden.

*AWI, Inc.*, 823 F.2d 100, 104 (5th Cir. 1987). Further, "such a determination should be unequivocal to terminate the right to maintenance and cure." *Id.*; *see also Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 80 (5th Cir. 1990) (finding that the *Vaughan* rule required that any evidence of a possibility of physical improvement negated any opinion that the seafarer had reached maximum medical improvement); *Bland v. Omega Protein Inc.*, CV 14-0127, 2016 WL 280403, at *5 (W.D. La. Jan. 21, 2016) (Where there are conflicting medical diagnoses as to MMI, summary judgment is not appropriate.). Here, the parties rely on competing evidence with regard to whether Plaintiff has reached MMI, but the Court is not in a position to weigh this evidence on a motion for summary judgment. This is particularly true where all ambiguities and doubts are to be resolved in the seaman's favor. *Vaughan*, 369 U.S. at 532. Accordingly, Moran's motion must be denied.

## V.
### CONCLUSION

For the reasons set forth herein, the Court finds Moran has failed to show Plaintiff has reached MMI, and that its cure obligation has therefore terminated. Accordingly, the Motion for Partial Summary Judgment [ECF No. 19] is DENIED, and a decision on this claim will be deferred until trial.[4]

THUS DONE in Chambers on this 3rd day of May, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[4] Admittedly, whether Plaintiff has reached MMI in this case is a close question, which perhaps could be resolved by way of an evidentiary hearing. However, because trial of this matter is scheduled to go forward in two months, and because it is unlikely that an evidentiary hearing could be scheduled before that time, the Court finds the most efficient use of counsel and judicial resources is to have this claim be resolved at trial.